IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

|  |  |
|---|---|
| **TRISTON COOPER**, | * |
| Plaintiff, | * Case No.: GJH-19-1334 |
| v. | * |
| **EDGEWOOD MANAGEMENT CORP.**, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Triston Cooper, proceeding *pro se*, filed a nine-count Complaint against Defendant Edgewood Management Corp. alleging sex-based hostile work environment, disparate treatment, and retaliation under Title VII of the Civil Rights Act, 42 U.S.C. § 2000, et. seq. (Counts I through VI), intentional infliction of emotional distress (Count VII), defamation (Count VIII), and violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq, (Count IX). Now pending before the Court is Defendant's Motion to Dismiss, ECF No. 16, as well as Defendant's Motion for an Extension of Time to File a Reply Brief, ECF No. 21. No hearing is necessary. Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendant's Motion for an Extension of Time is granted and Defendant's Motion to Dismiss is granted.

I.      **BACKGROUND**[1]

Plaintiff alleges that he was hired by Edgewood Management Corporation on September 9, 2009, to be the Community Center Site Director of the Benning Park Family Community Center. ECF No. 1 ¶ 1.[2] In this role, Plaintiff alleges that he reported to Angela Bowen and Shenita Vanish, who were initially employed by Defendant but who, in 2012, established the Community Services Foundation ("CSF"), which Plaintiff alleges to be "a charitable organization in partnership with DEFENDANT providing community services to DEFENDANT managed community housing properties and their properties community centers." *Id.* ¶¶ 2–3. Plaintiff alleges that CSF operated as a "pass-through" entity, and that although Defendant was his legal employer, Defendant fraudulently treated him as an employee of CSF to take advantage of government funding opportunities. *Id.* ¶¶ 4, 7–10, 30–32; *see also* ECF No. 20-1 ¶¶ 60–63.

Plaintiff alleges a series of negative events over the course of his employment. He first alleges that Defendant and Ms. Bowen changed his job duties in 2017, specifically preventing him from attending Benning Park Board of Director meetings. ECF No. 1 ¶¶ 12–15. He alleges that Defendant and Ms. Bowen did so in order to spread misinformation regarding Plaintiff's job performance and to falsely accuse him of financial misconduct before the Board. *Id.* ¶¶ 17–23. After these allegations were made, Defendant's Regional VP invited Plaintiff to attend the next Board meeting, where Board members informed him of what Ms. Bowen had said and "heatedly admonished" her for the false accusations, telling her to "[l]eave the boy alone." *Id.* ¶¶ 24–26. Plaintiff alleges that in retaliation for the Board's censure of Ms. Bowen—as well as for

---

[1] For purposes of considering Defendant's Motion to Dismiss, the Court accepts the facts alleged in the Complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). The Court also takes into account facts alleged in Plaintiff's Opposition, as federal courts have an "obligation to liberally construe a pro se [c]omplaint." *Rush v. Am. Home Mortg., Inc.*, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009).
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

2

challenging the legality of Defendant allowing CSF to identify Plaintiff as a CSF employee and sharing Plaintiff's personnel files with CSF—Ms. Bowen filed unsatisfactory performance evaluations and attempted to reverse his bonus award. *Id.* ¶¶ 11, 16, 27, 30–32; ECF No. 20-1 ¶ 25. Indeed, Plaintiff alleges a long pattern of harassment and intimidation that includes a CSF employee reprimanding him for taking approved vacation leave and the same employee texting him at 9:30 pm. ECF No. 1 ¶¶ 41–44, 53–69. Plaintiff also alleges he was subjected to sex discrimination, asserting that a female employee, his Assistant Director, has "consistently received more money during bonus distributions." ECF No. 20-1 ¶ 25. Additionally, a CSF employee told Plaintiff that he was in violation of the time reporting and recording policy and could be subject to disciplinary warnings, yet female employees with time reporting issues were not threatened with disciplinary action. ECF No. 1 ¶¶ 35–36, 39–40. Finally, Plaintiff alleges Defendant failed to timely send Family Medical Leave forms to his primary care physician at his request; wrongfully demanded that Plaintiff provide his Family Medical Leave request to CSF, rather than Defendant; failed to provide a response within five business days of receiving his certification form; and denied him coverage. *Id.* ¶¶ 45–46, 48; ECF No. 20-1 ¶¶ 31, 40–42; *id.* at 36–37. Plaintiff's termination was authorized on October 9, 2018, ECF No. 20-1 ¶ 59, although it appears he remained employed at least through April 2019, *id.* ¶ 58.

      On May 7, 2019, Plaintiff filed a complaint in this Court. ECF No. 1. On March 12, 2020, Defendant filed a Motion to Dismiss, arguing Plaintiff had failed to state a claim upon which relief could be granted. ECF No. 16. Plaintiff opposed Defendant's Motion on July 14, 2020. ECF No. 20. On July 21, 2020, Defendant moved for an eight-day extension of time to file a

Reply Brief, ECF No. 21, which Plaintiff opposed, ECF No. 23.[3] On July 29, 2020, Defendant filed a Reply in Support of Defendant's Motion to Dismiss. ECF No. 24.

## II.     STANDARD OF REVIEW

Defendant moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) permits a defendant to present a motion to dismiss for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss invoking 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678; *Twombly*, 550 U.S. at 555 (stating that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do").

Fed. R. Civ. P. 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*

---

[3] Plaintiff filed his Response more than four months after Defendant filed its Motion, and the Response was 44 pages in length. ECF No. 21 at 1–2. Plaintiff states that the delay will prejudice him but fails to provide any support for that assertion. ECF No. 23 at 2. Thus, the Court finds the requested eight-day extension warranted and will consider the Reply, filed six days after the initial due date, in making its determination.

*v. Kolon Indus., Inc*., 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim, *see Weller v. Dep't of Soc. Servs*., 901 F.2d 387, 391 (4th Cir. 1990).

## III. DISCUSSION

Plaintiff alleges Defendant violated Title VII of the Civil Rights Act and the Family Medical Leave Act. Plaintiff further alleges intentional infliction of emotional distress and defamation. The Court will first address Plaintiff's federal statutory claims before turning to the tort claims.

### A. Title VII Claims

Plaintiff alleges Defendant created a hostile work environment,[4] discriminated against him on the basis of his sex,[5] and retaliated against him. The Court will address each claim in turn.

---

[4] Counts II through IV of Plaintiff's Complaint—"Hostile Environment Violation of Title VII," "Harassment Violation of Title VII," and "Intimidation Violation of Title VII"—are understood to be duplicative allegations falling within Title VII's hostile work environment framework, which encompasses harassment and intimidation in the workplace on the basis of a protected characteristic.
[5] Likewise, Counts I and VI of Plaintiff's Complaint—"Disparate Treatment in Violation of Title VII" and "Gender Discrimination in Violation of Title VII"—are understood to be duplicative allegations of sex-based employment discrimination, which protects against disparate treatment on the basis of sex.

5

### 1. Hostile Work Environment

Title VII provides a cause of action to an employee when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To state a hostile work environment claim, a plaintiff must allege that the harassment "was (1) unwelcome, (2) based on [his protected characteristic, such as race, national origin, or religion], (3) sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive atmosphere, and (4) imputable to [the defendant]." *E.E.O.C. v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009). Courts evaluating whether a complaint has stated a plausible hostile work environment claim must consider "the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011). Importantly, "Title VII does not create a general civility code in the workplace" and "complaints premised on nothing more than rude treatment by [coworkers], callous behavior by [one's] superiors, or a routine difference of opinion and personality conflict with [one's] supervisor, are not actionable under Title VII." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) (internal citations and quotation marks omitted).

Plaintiff has not stated facts sufficient to support a prima facie claim of a hostile work environment due to harassment. Defendant notes, and Plaintiff concedes, that the Complaint does not allege that any harassment suffered was based on gender, ECF No. 20-1 at 25, nor does Plaintiff allege the harassment was conducted on the basis of another protected characteristic.

6

Instead, Plaintiff merely alleges general claims that Defendant subjected him to a hostile work environment, but courts are not in a position to adjudicate or remedy general harassment or hostility in the workplace that is not based on a protected characteristic. Title VII provides protection only against conduct occurring on the basis of an individual's membership in a protected class: race, color, religion, sex and national origin. 42 U.S.C. § 2000e-2(a). Because Plaintiff does not allege that the claimed harassment, intimidation, and hostile work environment was tied to his sex or membership in a protected class, the claims will be dismissed.

### 2. Disparate Treatment

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of employment discrimination, the plaintiff must show: "(i) the plaintiff's membership in a protected class; (ii) satisfactory job performance; (iii) the existence of an adverse employment action; and (iv) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. C.A.*, 626 F.3d 187, 190 (4th Cir. 2010) (internal citation omitted).

Plaintiff alleges that Defendant failed to promote him during the duration of his employment, prevented him from performing his job duties, did not raise his pay, and gave CSF improper managerial authority and control over Plaintiff's work assignments and duties. ECF No. 1 at 24–25, 35. However, changing his job duties and allowing supervision by a partner organization do not qualify as adverse employment actions. *See Engler v. Harris Corp.*, No. CIV.A. GLR-11-3597, 2012 WL 3745710, at *5–6 (D. Md. Aug. 28, 2012) ("[C]hanges in assignments or work duties, even if unappealing to an employee, do not constitute an adverse

employment action unless the change is accompanied by a decrease in salary or work hours, or a similar significant detrimental effect."). Additionally, Plaintiff does not allege that similarly situated female employees received different treatment nor that he was entitled to pay raises or promotions. Therefore, as Defendant asserts, ECF No. 16-2 at 14–15, these allegations are too conclusory to allow the claim to proceed. *See, e.g.*, *Gilliam v. S.C. Dep't of Juvenile Justice*, 474 F.3d 134, 142 (4th Cir. 2007) (conclusory statements that plaintiff was treated differently because of race and "general statements of dissimilar treatment" insufficient to show discrimination based on race).

Plaintiff further alleges that he received lower bonuses than a female colleague, but Plaintiff does not allege that the female coworker was "similarly situated" nor provide facts supporting that assertion. ECF No. 20-1 ¶ 25.[6] "[A] complaint that merely alleges a co-worker is similarly situated without providing facts to substantiate that similarity fails to state a claim for discrimination." *Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 486 (D. Md. 2016); *see also Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) ("[P]laintiffs are required to show that they are similar in all relevant respects to their comparator."); *see also id.* ("Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'") (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Plaintiff's alleged comparator was his Assistant Director. ECF No. 20-1 ¶ 25. Because her title and responsibilities

---

[6] Plaintiffs are not required as a matter of law to point to a similarly situated comparator to succeed on a discrimination claim. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545 (4th Cir. 2003). However, in this case, the plaintiffs have based their allegations completely upon a comparison to an employee from a non-protected class, and therefore the validity of their prima facie case depends upon whether that comparator is indeed similarly situated. *See Tex. Dep't. of Comty. Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)) ("[I]t is the plaintiff's task to demonstrate that similarly situated employees were not treated equally.")

differ from his, and he has not alleged other facts showing they were nevertheless similarly situated, she is not an adequate comparator for the purposes of a discrimination analysis, as "[t]here are by no means 'enough common features between the individuals to allow [for] a meaningful comparison.'" *Haywood*, 387 F. App'x at 360 (quoting *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007), *aff'd on other grounds*, 553 U.S. 442 (2008)).

Finally, Plaintiff alleges that he was disciplined for violations of the time reporting and recording policy while female employees were not disciplined for similar timesheet errors. ECF No. 1 ¶¶ 35–36, 39–40. However, like the changes in job responsibilities addressed above, the reprimand he received regarding the timesheets does not qualify as an adverse employment action. *See Engler*, 2012 WL 3745710, at *5–6 ("A poor performance review or reprimand is generally not considered an adverse employment action."). Therefore, Plaintiff has not alleged sufficient facts to make a claim of sex-based employment discrimination.

### 3. Retaliation

To establish a prima facie claim of retaliation under Title VII, a plaintiff must demonstrate three elements: "(1) he engaged in a protected activity, (2) his employer acted adversely against him, and (3) the protected activity was causally connected to the adverse action." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 789 (D. Md. 2013) (citing 42 U.S.C. § 2000e-3). An employee has not engaged in "protected activity" for purposes of Title VII unless the employee has engaged in oppositional activity directed to "an unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a).

Plaintiff alleges that Defendant retaliated against him after he questioned the legitimacy of Defendant's identification of Plaintiff as a CSF employee. ECF No. 1 at 32; *id.* ¶¶ 11, 16. Plaintiff alleges the adverse actions included: failure to promote him, failure to allow him to

perform his job duties, failure to provide pay raises, and severe physical and mental anguish. *Id.* at 33. Plaintiff also suggests that Ms. Bowen retaliated against him after she was criticized by members of the Benning Park Board of Directors for accusing him of financial misconduct. ECF No. 1 ¶¶ 25–27. Plaintiff alleges she prevented him from being awarded a performance bonus and gave him an unsatisfactory performance evaluation. *Id.* ¶¶ 11, 16, 27. Plaintiff has failed to allege that he was retaliated against for engaging in a protected activity, as neither challenging his identification as a CSF employee nor being the subject of the Board's criticism of Ms. Bowen can be construed as opposing discrimination covered by Title VII. *See Morey v. Carroll Cty., Gov't*, No. CV ELH-17-2250, 2018 WL 2064782, at *14 (D. Md. May 3, 2018) ("Title VII 'is not a general bad acts statute,' nor does it prohibit 'private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII.'") (quoting *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011)). Because Plaintiff has not alleged that he was engaged in a protected activity, his retaliation claim fails.

### B. FMLA

Two types of claims exist under the FMLA: (1) "interference," in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA, and (2) "retaliation," in which the employee alleges that the employer discriminated against him for exercising his FMLA rights. *Edusei v. Adventist Healthcare, Inc.*, No. CIV.A. DKC 13-0157, 2014 WL 3345051, at *5 (D. Md. July 7, 2014). "The distinction between an interference claim and a retaliation claim under the FMLA is not always clear." *Edusei*, 2014 WL 3345051, at *5. The Fourth Circuit has distinguished between the "prescriptive" (interference) and "proscriptive" (retaliation) provisions of the FMLA. *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 546 (4th Cir. 2006). The former sets a floor for conduct by employers and creates entitlements

for employees, while the latter protects employees from discrimination or retaliation for exercising their substantive rights under the FMLA. *See id.* Here, Plaintiff alleges that Defendant violated the FMLA by failing to timely provide his physician with FMLA certification forms; wrongfully demanding that Plaintiff provide his Family Medical Leave request to CSF, rather than Defendant; failing to provide a response within five business days of receiving his certification form; and denying him coverage. ECF No. 20-1 ¶¶ 31, 40–42; *id.* at 36–37; ECF No. 1 ¶ 34; *id.* at 44. This is properly characterized as an interference claim.

"To make out an 'interference' claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). In order to show he was entitled to an FMLA benefit, Plaintiff must sufficiently allege that he was an eligible employee, meaning he must have worked for the employer for at least 12 months and worked at least 1250 hours in the 12 months prior to the requested leave, 29 U.S.C. § 2611(2); (2) that his employer was covered by the statute, meaning the employer was "engaged in commerce or in any industry or activity affecting commerce" and employed "50 or more employees for each working day," 29 U.S.C. § 2611(4); (3) that he had a "serious health condition," that is, "an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider," 29 U.S.C. § 2611(11); *id*. § 2612(a)(1)(D); and (4) that he gave his employer adequate notice of his intention to take leave, informing the employer more than 30 days in advance or "as is practicable," § 2612(e). *See Wonasue v. Univ. of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 496 (D. Md. 2013); *see also Yashenko v. Harrah's NC Casino Co*., LLC, 446 F.3d 541, 549 (4th Cir. 2006); *Rhoads v. FDIC*, 257 F.3d 373, 384 (4th Cir. 2001); *Rodriguez v. Smithfield Packing*

*Co.*, 545 F.Supp.2d 508, 516, 523 (D. Md. 2008). Prejudice caused by the violation can be proven by showing that the employee lost compensation or benefits "by reason of the violation," 29 U.S.C. § 2617(a)(1)(A)(i)(I); sustained other monetary losses "as a direct result of the violation," *id*. § 2617(a)(1)(A)(i)(II); or suffered some loss in employment status remediable through "appropriate" equitable relief, such as employment, reinstatement, or promotion, *id*. § 2617(a)(1)(B). *Anderson v. Discovery Commc'ns, LLC*, 517 F.App'x 190, 198 (4th Cir. 2013).

      Because Plaintiff alleges that Defendant ultimately provided him with FMLA forms, *see* ECF No. 20-1 at 37, the Court may infer that Defendant was a covered employer and Plaintiff was a covered employee. However, Plaintiff does not allege facts showing that he had a qualifying serious health condition. *Cf. e.g.*, *Greene v. YRC, Inc.*, 987 F. Supp. 2d 644, 650 (D. Md. 2013) (evaluating whether the plaintiff had sufficiently alleged elements of the interference claim and finding that, where the plaintiff alleged that he experienced specific health issues, a determination of whether they qualified as a "serious health condition" under the FMLA was inappropriate at the dismissal stage); *Kent v. Maryland Transp. Auth*., No. CIV.CCB-06-2351, 2006 WL 3931648, at *4 (D. Md. Dec. 21, 2006), aff'd, 232 F. App'x 290 (4th Cir. 2007) (granting a motion to dismiss where the plaintiff "does not allege any actual damages resulting from the length of time it took the defendants to inform her of the status of her leave request"). Plaintiff also has not shown how he was prejudiced by Defendant's actions. Although he alleges that "[d]ue to DEFENDANT intentional delay in informing its payroll department concerning Tristan Cooper FML leave, Tristan Cooper bi-weekly paycheck was reduced by 1/4, causing Tristan Cooper financial hardship," ECF No. 20-1 ¶ 49, he does not explain how the reduction in his paycheck was related to the interference with his rights under the FMLA. Finally, as Defendant notes, ECF No. 16-2 at 24, no provision of the FMLA or its regulations requires

Edgewood to provide FMLA forms directly to Plaintiff's physician. Instead, if an employer requires a certification form, the employee is responsible for ensuring it is completed and submitted within 15 days. 29 C.F.R. § 825.305; 29 C.F.R. § 825.313. Therefore, to the extent Plaintiff bases his FMLA claims on Defendant's failure to provide the FMLA forms to his physician, those claims will not succeed. For all of these reasons, Plaintiff's FMLA claim fails and will be dismissed. However, because Plaintiff may be able to cure the deficiency with an amended complaint, the Court dismisses Plaintiff's FMLA claims without prejudice.

### C. State Tort Claims

Plaintiff's remaining claims include intentional infliction of emotional distress and defamation, tort claims over which this Court originally exercised supplemental jurisdiction, as they arise out of the same operative facts as Plaintiff's claims brought under Title VII of the Civil Rights Act and the Family Medical Leave Act and therefore form part of the same case or controversy. 28 U.S.C. § 1367(a). However, having dismissed Plaintiff's federal claims, the Court finds it appropriate to dismiss Plaintiff's related state claims, rather than to proceed to adjudicate state law claims which do not independently qualify for the exercise of federal jurisdiction. *Id.* §1367(c)(3). Therefore, the Court dismisses Counts VII and VIII without reaching the merits of those claims.[7]

---

[7] However, if Plaintiff were to amend the Complaint successfully with respect to the FMLA claims, the Court would maintain jurisdiction over the state law claims. However, the Court notes that the intentional infliction of emotional distress claims would likely be dismissed, as the alleged facts do not rise to the level of conduct that would shock the conscience and thus fall short of the high standard for of intentional infliction of emotional distress claims in employment cases in the District of Columbia. *See Anderson v. Ramsey*, No. CIV.A. 04-56 (GK), 2006 WL 1030155, at *8 (D.D.C. Apr. 19, 2006); *Stanford v. Potomac Elec. Power Co.*, 394 F.Supp.2d 81, 91 (D.D.C. 2005); *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 16, shall be granted, and Motion for Extension, ECF No. 21, shall be granted. A separate Order follows.

Dated: <u>March 10, 2021</u>　　　　　　　　　　　　/s/<u>　　　　　　　　　　　　　　　</u>
　　　　　　　　　　　　　　　　　　　　　　　　　GEORGE J. HAZEL
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge